NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0544n.06

No. 24-4092

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 24, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| LAWRENCE ALLEN TAYLOR, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: SUTTON, Chief Judge; MURPHY and BLOOMEKATZ, Circuit Judges.

MURPHY, Circuit Judge. A district court sentenced Lawrence Taylor to 284 months' imprisonment for a string of bank robberies. Taylor later asked the court to reduce his sentence based on a change to his guidelines range. The court refused. Taylor now claims that the court did not adequately explain why it denied him relief. But his briefing did not even alert us to one of the main reasons for that denial: he committed a prison murder while serving his sentence for the bank robberies. Suffice it to say, the court did enough to explain its decision. We thus affirm.

I

In the summer of 2009, Taylor helped Rachel Talkington rob four banks in or around Akron, Ohio. In the first two robberies, Taylor drove Talkington to the bank, instructed her to give a threatening note to the bank teller to facilitate the robbery, and picked her up after she completed the crime. The pair followed the same general pattern during the third robbery, but

Taylor also gave Talkington a handgun to use. Talkington could not complete this robbery and pointed the gun at a bank teller as she fled. During the fourth robbery, the pair broke into a bank employee's home and held her and her fiancé at gunpoint. Taylor told Talkington to drive the employee to the bank to rob it.

After the government brought an eight-count indictment against Taylor, the parties entered into a plea agreement. Taylor agreed to plead guilty to three crimes: conspiring to rob banks, *see* 18 U.S.C. §§ 371, 2113(a), brandishing a firearm during a crime of violence, *see id.* § 924(c)(1)(A)(ii), and committing a bank robbery while putting a victim's life in jeopardy with a handgun, *see id.* § 2113(a), (d). The government agreed to dismiss the other five counts.

At sentencing, the district court calculated Taylor's guidelines range as 168 to 210 months' imprisonment for his two bank-robbery offenses. The court imposed a 200-month sentence on these counts. Taylor's firearm offense also triggered a mandatory minimum of 7 years' imprisonment that he must serve consecutively to the two other offenses. *See id.* § 924(c)(1)(A)(ii), (c)(1)(D)(ii). The court thus imposed a total sentence of 284 months.

Years later, the Sentencing Commission amended the guidelines in a way that affected Taylor's guidelines range. *See* U.S. Sentencing Comm'n, Guidelines Manual App. C., Amdt. 821 (Part A) (Nov. 2023) (U.S.S.G.). Amendment 821 changed the number of status points that district courts should add to a defendant's criminal history score if the defendant committed the offense while serving a sentence for an older crime. *See id.* The Commission also allowed defendants to seek retroactive relief based on this amendment. *See* U.S.S.G. § 1B1.10(a), (d), (e)(2), & cmt. n.7.

Taylor relied on Amendment 821 to seek a reduced sentence under 18 U.S.C. § 3582(c)(2). The parties do not dispute that the amendment reduced Taylor's guidelines range for his bank-robbery offenses to 151 to 188 months. Still, the district court refused to grant relief to Taylor as

a discretionary matter. *See United States v. Taylor*, 2024 WL 5075174, at \*4 (N.D. Ohio Dec. 11, 2024). Taylor appeals.

## II

District courts should follow a two-step approach when deciding whether to reduce a sentence based on a retroactive change to a guideline. *See United States v. Davis-Malone*, 128 F.4th 829, 831–32 (6th Cir. 2025). As a legal matter, courts should determine whether defendants satisfy the requirements to make them eligible for relief. *See id.* at 832. As a discretionary matter, courts should then determine whether eligible defendants deserve a sentence reduction. *See id.*

This case involves only the second discretionary step. At that step, courts should use the sentencing factors in 18 U.S.C. § 3553(a) to channel their discretion. *See id.* They also should consider the defendant's post-sentencing conduct while in prison. *See id.* And they should consider all the nonfrivolous grounds for relief that a defendant raises. *See id.* at 834. But they need not write lengthy opinions ticking through all those arguments. *See id.* Rather, they need only leave a record showing that they evaluated them. *See id.* Congress granted district courts "broad discretion" both in deciding whether to grant relief and in deciding how to convey the decision to the defendant. *United States v. Goodwin*, 87 F.4th 321, 326–27 (6th Cir. 2023) (quoting *Concepcion v. United States*, 597 U.S. 481, 501 (2022)). We thus review denials of discretionary relief deferentially. *See Davis-Malone*, 128 F.4th at 834. A defendant must show that the district court abused its significant sentencing discretion. *See id.*

Taylor has not made this showing here. To the contrary, the district court's 7-page decision thoroughly explained its reasoning and grounded its denial of relief in the § 3553(a) factors. To start, the court recognized that Amendment 821 reduced Taylor's guidelines range to 151 to 188 months. *See Taylor*, 2024 WL 5075174, at \*2. So the top end of the amended range was 12 months

below the 200-month sentence imposed for Taylor's two bank-robbery convictions. But the court nevertheless decided that an above-guidelines sentence remained appropriate after it took into "consideration all of the" other § 3553(a) factors. *Id.* at *4. Of most note, the court highlighted the need "to protect the public from further crimes" by Taylor. 18 U.S.C. § 3553(a)(2)(C). It reasoned that Taylor's offenses, his criminal history, and his post-sentencing conduct all showed that he would represent "a danger to others and to the community if released" early. *Taylor*, 2024 WL 5075174, at *3–4. Taylor had helped an accomplice commit "armed robberies" that put a bank employee and her fiancé in danger. *Id.* at *3. His past convictions also contained substantial violence. *Id.* Lastly, since his present convictions, he had committed "more than 40 rules infractions," including "assaultive behavior," possession of "dangerous weapons," refusals to obey corrections officers, and threats of harm. *Id.* Most egregiously, Taylor murdered "his cellmate with a homemade knife." *Id.* The court thus found that Taylor was "unable or unwilling" to behave appropriately both inside and outside prison walls. *Id.*

Taylor's contrary arguments lack merit. He first suggests that the district court failed to adequately explain why it stuck to its initial sentence even though that sentence now fell above the guidelines range. But the court's opinion left no doubt why it did so: Taylor's longstanding and continued inability to control his violence. So it did not abuse its discretion in the way in which it conveyed its denial of relief. *See Goodwin*, 87 F.4th at 327.

This fact distinguishes this case from the one that Taylor invokes: *United States v. Morris*, 71 F.4th 475 (6th Cir. 2023). In that case, the district court sentenced the defendant to the same sentence despite a change in law that cut his guidelines range in half. *See id.* at 479–80. We held that the district court failed to explain its decision because it simply said that it wanted to impose the same sentence without giving any further explanation. *See id.* at 483. Nothing of the sort

4

happened here. The district court made its reasoning quite clear and grounded its denial in the need to protect the public from Taylor's violence.

We affirm.