RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0303p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee*,

     *v*.

DAMON ALLEN PATTERSON,

                *Defendant-Appellant*.

No. 24-1571

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cr-20631-1—Mark A. Goldsmith, District Judge.

Decided and Filed:  November 5, 2025

Before:  MOORE, BUSH, and NALBANDIAN, Circuit Judges

─────────────────

**COUNSEL**

**ON BRIEF:**  Sara Garber, Benton C. Martin, OFFICE OF THE FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellant.  Michael Taylor, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────────

**OPINION**

─────────────────

NALBANDIAN, Circuit Judge.  Damon Patterson murdered someone while on supervised release, so the district court revoked his supervised release and imposed a term of reimprisonment.  Patterson raises procedural and substantive objections to his new sentence, but we find his challenges meritless and affirm.

**I.**

In 2012, Patterson pled guilty to federal drug-distribution conspiracy charges. The district court sentenced him to 10 years in prison and 8 years of supervised release. Patterson began supervised release in 2019.

In 2022, he shot and killed a man outside a convenience store before stomping the man's head into the snow. The incident was captured on the store's security camera video. Patterson pled guilty to murder in state court. Unsurprisingly, the murder also ended Patterson's federal supervised release, seeing as committing homicide violates the supervised-release conditions. *See* 18 U.S.C. § 3583(d). The federal district court revoked Patterson's supervised release and ordered him reimprisoned.

The advisory Guidelines range was 51 to 63 months, but the term of imprisonment was statutorily capped at 60 months. The district court heard from Patterson and the government, and then ordered Patterson reimprisoned to a within-Guidelines term of 60 months, noting several times the seriousness of the supervised-release violation (murder). The court ran the prison term consecutive to Patterson's state sentence, consistent with the Guidelines' recommendation. Although Patterson objected to the length of his term of imprisonment and to serving his federal term of imprisonment consecutively, rather than concurrently, he raised no objection to the court's reliance on any sentencing factors.

This appeal followed.

**II.**

Patterson raises two challenges to the revocation of his supervised release, one of procedural unreasonableness and one of substantive unreasonableness.

**A.**

We normally review a challenge to a sentence's reasonableness for abuse of discretion. *United States v. Johns*, 65 F.4th 891, 893 (6th Cir. 2023). But when, as here, the defendant fails to raise an objection of procedural error, we review only for plain error. *Id.*

Patterson first argues that the district court procedurally erred by treating the seriousness of his supervised-release violation as a mandatory factor for consideration. It's true that the seriousness of the violation isn't a mandatory factor. The supervised-release statute requires the district court to consider most of the general sentencing factors listed at 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3583(e) (incorporating most of the § 3553(a) factors). But this list of required factors doesn't include the seriousness of the violation. Courts have instead understood it as a discretionary factor that may be considered. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011); *United States v. Morris*, 71 F.4th 475, 482 (6th Cir. 2023). It's also true that we have sometimes held that a district court's misunderstanding of its own discretion can constitute procedural error. *See United States v. Kamper*, 748 F.3d 728, 743 (6th Cir. 2014).

But we see no indication that the district court misunderstood its discretion or viewed the seriousness of the violation as a mandatory factor. At the supervised-release-revocation hearing, the court "t[ook] into account all the appropriate sentencing factors including protecting the public from further crimes of the defendant, [and] deterring others who might imitate his conduct." R. 24, Hr'g Tr., p.17, PageID 99. Then it added that it would also consider "the violation of trust that a supervised release violation represents." *Id.* Nowhere did the court declare itself bound by statute to consider the severity of the violation.

While the court did dwell for some time on the gravity of the murder, it did so because Patterson had argued for a more lenient sentence. Patterson asked for leniency because he pled guilty to second-degree murder rather than first-degree murder, and because he argued that he acted in self-defense. *Id.* at p.11, PageID 93. In other words, Patterson *invited* the court to address the nature of the murder. Had the court not responded adequately to Patterson's argument, the court might have left the imposition vulnerable to a different challenge.

*Esteras v. United States*, 145 S. Ct. 2031 (2025), doesn't alter our conclusion.[1] *Esteras* held that district courts may not consider the "seriousness of the offense" at the supervised-release-revocation hearing because it's one of the few § 3553(a) factors that the supervised-release statute doesn't incorporate. *See* 145 S. Ct. at 2040–41. But along the way, the Supreme

---

[1]The Supreme Court decided *Esteras* while this case was pending.

Court drew an important distinction.  When § 3553(a)(2)(A) speaks of the "seriousness of the offense," the term "offense" refers to "the underlying crime of conviction, not the violation of the supervised-release conditions."  145 S. Ct. at 2040.  Courts are forbidden from considering the former, but not necessarily the latter.

Here, the district court didn't consider the seriousness of Patterson's "offense"—the drug conspiracy—as § 3553(a)(2)(A) uses that term.  Instead, the court discussed the seriousness of Patterson's supervised-release violation—committing murder.  And as noted, considering that conduct is permissible.  *Johnson*, 640 F.3d at 203 ("[V]iolations of a defendant's term of supervised release are properly characterized as breaches of trust which may be sanctioned upon revocation." (citation modified)); *Morris*, 71 F.4th at 482; *see also United States v. Simpson*, No. 23-3961, 2025 LX 347612, at *2–4 (6th Cir. July 31, 2025) (order) (reiterating, post-*Esteras*, that courts may still rely on the seriousness of the supervised-release violation).[2]  That's what the district court did.  *See* R. 24, Hr'g Tr., p.17–18, PageID 99–100 (discussing Patterson's supervised-release violation as a "violation of trust" and a "breach of trust").

*Esteras* thus doesn't help Patterson.  If anything, *Esteras* helps the government because the Supreme Court reiterated that plain-error review applies when a defendant fails to object to allegedly impermissible factors used by the district court.  145 S. Ct. at 2045.

Nor is our conclusion inconsistent with *United States v. Hoyle*, 148 F.4th 396 (6th Cir. 2025).  In that case, the district court sentenced Hoyle for both a substantive offense and a supervised-release violation *at the same time*.  *Id.* at 401–02.  In its pre-*Esteras* decision, the district court didn't clarify whether it had applied the § 3553(a)(2)(A) factors to the original offense or to the supervised-release violation.  *See id.* at 402.  That confusion led a panel of this

---

[2]*Esteras* didn't address the question whether courts can consider the seriousness of the violation conduct, as opposed to the seriousness of the original crime of conviction.  *See* 145 S. Ct. at 2040 n.5.  But as discussed above, caselaw in this circuit permits relying on the seriousness of the violation conduct as a breach of trust.

Patterson still insists that *Esteras*'s logic implies that courts can't consider *any* retributive consideration, whether for the original offense or the supervised-release violation. We disagree. *Esteras* simply reserved the issue, so our caselaw remains controlling.  And aside from precedent, one can imagine good policy reasons why Congress might have chosen to distinguish between the original offense and the new violation. The seriousness of the original offense would already have been taken into consideration at the initial sentencing, and Congress might want to avoid double counting later on. The supervised-release violation, on the other hand, is new conduct that could warrant a fresh calculus.

court to remand to ensure that the district court impose a sentence based only on the permissible factors set forth in § 3583(e). *Id.* at 406–07.

Here, the district court held only a hearing on revocation of supervised release—it didn't simultaneously sentence Patterson for a new offense. Nor did the district court consider the seriousness of his original offense. As noted, the court relied only on the seriousness of Patterson's supervised-release violation as a breach of trust—which is permissible under circuit precedent. *See* R. 24, Hr'g Tr., p.17–18, PageID 99–100; *Johnson*, 640 F.3d at 203; *see also United States v. Milton*, Nos. 24-4066, 24-4067, 2025 WL 2965822, at *6 (6th Cir. Oct. 21, 2025).

We see no procedural error, much less a plain one, in the district court's decision. "If [Patterson] wanted a more robust explanation" of the factors the court relied on, "then he should have raised his objection before the district court." *United States v. Ramirez Gomez*, 129 F.4th 954, 966 (6th Cir. 2025).

**B.**

Patterson also raises a substantive challenge. "A claim that a sentence is substantively unreasonable is a claim that a sentence is too long . . . . It's a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). We examine the district court's decision only for abuse of discretion, and "we are highly deferential in our review." *United States v. Sears*, 32 F.4th 569, 573 (6th Cir. 2022). Within-Guidelines sentences (like Patterson's here) are presumptively reasonable. *Id.*

Patterson maintains that the district court placed too much weight on the seriousness of the supervised-release violation. We disagree. The district court did spend time addressing how "homicide is . . . a most serious matter," and how "[k]illing someone is the most serious of crimes." R. 24, Hr'g Tr., p.18, PageID 100. But the district court also considered the need for the term of imprisonment to "protect[] the public from further crimes of the defendant," and to "deter[] others who might imitate his conduct." *Id.* at p.17, PageID 99; *see also id.* at p.18, PageID 100 ("[T]he Court does believe that the public does need to be protected from further

crimes of this defendant, [and] others need to be deterred . . . .").  The court thus considered other factors, like those set out at § 3553(a)(2)(B) (deterrence) and § 3553(a)(2)(C) (protecting the public).  The court didn't (as Patterson argues) "base[] its sentence entirely on the seriousness of the [violation]."  Appellant Br. at 19.

The district court didn't abuse its discretion in weighing these factors and imposing a within-Guidelines term of imprisonment.  Sixty months for murdering someone while on supervised release isn't "too long."  *Rayyan*, 885 F.3d at 442; *see also United States v. Fields*, 306 F. App'x 950, 951–53 (6th Cir. 2009) (per curiam) (60 months, well above the Guidelines range of 27–33 months, wasn't too long for a defendant who committed second-degree murder on supervised release).  Patterson's substantive-reasonableness claim fails.

**III.**

For these reasons, we affirm.