NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0203n.06

No. 25-5842

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 05, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| RANDY OLIVER, | ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: MOORE, WHITE, and THAPAR, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Randy Oliver challenges the substantive reasonableness of his 151-month sentence imposed after he pleaded guilty to one count of possession with intent to distribute cocaine and one count of possession with intent to distribute fentanyl, both in violation of 21 U.S.C. § 841(a)(1). We **AFFIRM**.

**I.**

On May 30, 2023, a confidential informant identified Randy Oliver[1] as a distributor of cocaine, methamphetamine, and fentanyl in the Oakhaven neighborhood of Memphis, Tennessee. Between late May and July 2023, the confidential informant and an undercover ATF agent arranged four buys of controlled substances from Oliver; three involved cocaine, and one involved both cocaine and fentanyl. During these transactions, Oliver discussed future drug sales and expressed an interest in purchasing an assault rifle or a Glock firearm. Oliver was arrested at the

---

[1] In his change of plea hearing, Oliver advised the district court that his last name is actually "Newberry." However, because Oliver's appeal brief continues to refer to him as "Oliver," we do the same.

final controlled buy on July 20, 2023. That same day, a search of his residence executed pursuant to a search warrant recovered drug paraphernalia, including a digital scale and a razor blade with a white powdery substance. In total, the four transactions involved 130.72 grams of cocaine and 21.62 grams of fentanyl.[2]

Oliver was charged with one count of possession with intent to distribute cocaine and one count of possession with intent to distribute fentanyl, both in violation of 21 U.S.C. § 841(a)(1). He pleaded guilty to both counts. In the presentence report ("PSR"), the probation officer determined that Oliver was a career offender because he was being sentenced for controlled substances offenses and he had at least two prior felony convictions for either a crime of violence or a controlled substance offense.[3] As a result, Oliver's base offense level was enhanced from 22 to 32. After subtracting three levels for acceptance of responsibility, Oliver's total offense level was 29. Although Oliver's criminal-history score of nine established a criminal-history category of IV, his career-offender status placed him in criminal-history category VI. With Oliver's total offense level of 29 and level VI criminal-history category, the sentencing Guidelines provided a range of 151 to 188 months' imprisonment.

In a position paper submitted before sentencing, Oliver objected to the application of the career-offender enhancement, arguing that the resulting advisory Guidelines range "serious[ly] overstate[d]" his criminal history. R. 70, PID 186. Although he acknowledged his multiple prior convictions, Oliver asserted that they "reveal that [he] has been nothing more than a low[-]level dealer and mostly drug user." *Id.* at 188. Highlighting that his Guidelines range would be between

---

[2] Although Oliver objected to the drug amounts set forth in the PSR at sentencing, he does not raise this issue on appeal.

[3] The qualifying prior felony convictions identified in the PSR are an aggravated assault, arising from Oliver's shooting a person after a verbal altercation in 2009, and several counts of possession with intent to distribute and distribution of heroin in 2010.

30 and 37 months without the career-offender enhancement, Oliver requested a downward departure and/or variance.

At sentencing, Oliver maintained his objection to the career-offender enhancement and requested a downward departure or variance. He urged the district court to consider the age of his prior convictions, as well as the small amounts of controlled substances involved, and argued that "applying the career offender provision or enhancement would . . . create a disparity." R. 87 at PID 294–96. In response, the court noted that the government had made the opposite argument—that because many of Oliver's prior charges had been reduced from felonies to lesser felonies or misdemeanors and none of his convictions prior to 2009 resulted in points, his criminal history was actually underrepresented—but agreed with Oliver that it would be "folly" to "try to speculate" why these past charges were reduced. *Id.* at 302–04. In his statement to the court, Oliver apologized, explained that many of his prior offenses were motivated by a need to fund his "real[ly] bad pill habit," and denied being a "hardcore criminal." *Id.* at 306–07.

The district court then conducted a detailed analysis of the sentencing factors under 18 U.S.C. § 3553(a). After first concluding that the nature and circumstances of the offenses were "pretty serious," the court turned to Oliver's history and characteristics, starting with his criminal history. *Id.* at 308–09. The court began by discussing offenses Oliver committed when he was eighteen-years old. Oliver was 44 at the time of sentencing. The court acknowledged that it "normally" would not consider convictions this old but explained that "the record indicates [that Oliver] has been in trouble one way or another for" nearly 25 years. R. 87 at 309–10. The court reviewed the rest of Oliver's criminal history, which included prior convictions for criminal conduct involving violence, firearms, controlled substances, repeatedly driving without a license, and failures to appear. Throughout, the court noted where charges had been reduced or parole

granted and highlighted the repeated revocation of Oliver's probation, parole, and supervision. The court emphasized the importance of a defendant's prior behavior when released into the community to the court's sentencing considerations. Although it recognized that some of Oliver's prior offenses were "not the most serious," it found that "many of them are violent offenses." *Id.* at 314. The court concluded that Oliver's criminal history was "terrible." *Id.*

Ultimately, after considering Oliver's childhood and family circumstances, his struggles with substance abuse, his education and work history, and the need for respect for the law and deterrence, the district court determined it would be "inappropriate" to "vary from the [G]uidelines" or grant a departure. *Id.* at 319. It sentenced Oliver to two concurrent 151-month terms of imprisonment—the bottom of the Guidelines range. *Id.*

## II.

Oliver's sole argument is that his within-Guidelines sentence is substantively unreasonable because the district court gave too much weight to his criminal history under § 3553(a).[4] "A claim that a sentence is substantively unreasonable is a claim that a sentence is too long (if a defendant appeals) or too short (if the government appeals)." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). We have found sentences to be substantively unreasonable "when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). "Sentences within a defendant's Guidelines range are presumptively substantively reasonable." *United States v. Pirosko*, 787 F.3d 358, 374 (6th Cir. 2015). We review challenges to the substantive reasonableness of a sentence for

---

[4] In the district court, Oliver asserted that the court should also consider a downward departure from the applicable criminal-history under U.S.S.G. § 4A1.3(b)(3)(A) based on the overstatement of his criminal history. Oliver's argument on appeal, however, is based only on the district court's weighing of the § 3553(a) factors.

abuse of discretion, *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022), and grant relief only when we are left with "a 'definite and firm conviction' that the district court erred by not imposing a lower sentence," *United States v. Johns*, 65 F.4th 891, 894 (6th Cir. 2023) (quoting *United States v. Hymes*, 19 F.4th 928, 933 (6th Cir. 2021)).

Oliver argues that the district court gave undue weight to his criminal history when it considered old convictions, penalized him for "lenient sentence[s]" he previously received, and "punished him for parole violations for fear he will violate again." Appellant's Br. at 15–18. Because Oliver's sentence of 151 months' imprisonment is at the very bottom of the applicable Guidelines range, we begin with the presumption of substantive reasonableness. Oliver has not overcome this presumption.

First, the district court did not abuse its discretion when considering Oliver's prior convictions. Under § 3553(a), courts may consider a defendant's criminal history—including old convictions, unscored offenses, and misdemeanors—when crafting a sentence. *United States v. Morris*, 71 F.4th 475, 482 (6th Cir. 2023) ("the district court could consider [the defendant's] prior criminal history when sentencing him, even if the criminal history was already factored into his sentencing range under the Guidelines"). This is particularly true where, as here, the court evaluates old convictions and prior misdemeanors as part of a defendant's pattern of behavior. *See United States v. Seymour*, 468 F.3d 378, 383, 390 (6th Cir. 2006) (affirming sentence based in part on the defendant's "lengthy criminal record"). The district court observed that many of Oliver's prior offenses did not receive criminal-history points and that his nearly 25-year criminal history, which included numerous driving offenses, failures to appear, drug offenses, and several felonies, showed disrespect for the law and a high likelihood of recidivism. That the district court "attach[ed] . . . great weight" to Oliver's criminal history over other factors, *United States v.*

*Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020) (citation modified), and "consider[ed] [Oliver's] prior offenses and his likelihood of reoffending," *United States v. Lanning*, 633 F.3d 469, 474 (6th Cir. 2011), does not amount to an abuse of discretion.

Nor did the district court punish Oliver for his prior sentences on reduced charges or improperly subject him to plenary resentencing for them. The court recognized the difficulties in ascertaining why certain prior sentences were reduced and explicitly disclaimed any attempt to speculate on the answer. And we do not read the district court's recitation of Oliver's criminal history as an attempt "to use the instant offense as a springboard to resentence [Oliver]" for his prior offenses or punish him for past parole violations. *United States v. Lee*, 974 F.3d 670, 681 (6th Cir. 2020). Instead, the court noted, in relation to the need for deterrence and to promote respect for the law, that the previous sentences had failed to deter Oliver from reoffending. *See United States v. Buchanan*, 449 F.3d 731, 733 (6th Cir. 2006) (affirming within-Guidelines sentence where the district court analyzed "the likelihood of recidivism in the context of [the defendant's] extensive criminal history") (citation modified). This approach is permitted under our case law. *See, e.g.*, *United States v. Gunter*, 620 F.3d 642, 647 (6th Cir. 2010) (affirming substantive reasonableness of upward departure where the district court considered defendant's "lengthy criminal history" as relevant to deterrence and respect for the law factors); *United States v. Mitchell*, 724 F. App'x 437, 439–40 (6th Cir. 2018) (finding no abuse of discretion by district court that discussed the defendant's history of re-offending, pointing to the defendant's relatively lenient prior sentences, which were followed by the defendant violating his probation in imposing a within-Guidelines sentence).

Relatedly, contrary to Oliver's assertions, the district court did not improperly penalize him for prior parole violations. Rather, the court properly considered Oliver's repeated parole

violations as indicators of his "total disrespect for the law" and his inability to "conform himself to basically the rules of society" under various § 3553(a) factors. R. 87, PID 318–19. And the court did not "hypothesize a future criminal action or result" based on Oliver's past parole violations but instead noted the ongoing pattern of parole revocations as "relevant to determining what length of sentence was sufficient to prevent recidivism" and "promote respect for the law." *United States v. Tristan-Madrigal*, 601 F.3d 629, 634–35 (6th Cir. 2010). Because Oliver's nearly 25-year criminal history includes "at least a half dozen" release revocations, often "for additional criminal activity," R. 87, PID 318, "the district court could fairly conclude" that "the risk of recidivism [was] great," *United States v. Vonner*, 516 F.3d 382, 390 (6th Cir. 2008).

Oliver points to the district court's failure to address the "protection of the public" factor as evidence that it was improperly "punish[ing] him for his prior parole violations, speculating that he would violate again." Appellant's Br. at 18. Although Oliver is correct that the district court did not explicitly refer to this § 3553(a) factor, we view the district court's repeated mention of "the community" as an indication that it was considering protection of the public when evaluating Oliver's prior violations and crafting an appropriate sentence. The record thus does not support Oliver's assertion that the district court was punishing him for past violations for which he had already been punished.

*United States v. Lee*, the case on which Oliver relies, is distinguishable. In *Lee*, we considered the substantive reasonableness of a two-year upward variance, which eliminated the presumption of substantive reasonableness, that nearly doubled the defendant's sentence and was imposed by the district court based on the defendant's "long and serious criminal history [and] parole violations." 974 F.3d at 675. Lee was arrested for possessing a stolen firearm. *Id.* at 674. Although his criminal history included a criminal-sexual-conduct conviction and

7

multiple violations of his parole conditions, the sentencing offense was his first firearm charge. *Id.* at 673–74. We recognized that our case law permits an upward variance where there is similarity between the defendant's prior convictions and the sentencing offense, demonstrating the need for deterrence beyond that already captured by the Guidelines. *Id.* at 678. But, in *Lee*, because there was no "meaningful relationship between the instant offense and [the defendant's] alleged incorrigibility," we found an upward variance to be inappropriate double counting of the defendant's criminal history. *Id.* at 677–78. We underscored that § 3553(a) "does not give a court unfettered discretion to preemptively" vary upward "based on its speculation that the defendant might commit some other nonviolent crime" or violate parole "at some unknown point in the future." *Id.* at 680. And we further concluded that continuing to punish the defendant for "his past parole violations—particularly when they are unrelated to the offense for which he is being sentenced—" was "entirely unreasonable" and unsupported by our case law. *Id.* at 681.

Oliver concedes that, unlike in *Lee*, his sentence is within the Guidelines range and is, thus, presumptively valid. Appellant's Br. at 18. The concerns that animated *Lee*—specifically, the imposition of an upward variance "absent circumstances presenting a unique need for specific deterrence beyond the [G]uidelines range" and based on "speculation that Lee will again violate parole upon release"—are not implicated here. *Lee*, 974 F.3d at 681. The district court did not "double count" Oliver's criminal history by varying upward. And Oliver's criminal history involving violence and drugs bears some "relation to the instant offense," such that considering it neither contravenes Congress's sentencing goals, nor amounts to the district court improperly exercising "unfettered discretion" beyond Section 3553(a)'s mandate. *Id.* at 680–81; *see, e.g., United States v. Axline*, 93 F.4th 1002, 1011 (6th Cir. 2024) (finding district court did not abuse its discretion under *Lee* by imposing an upward variance because, among other reasons, the

defendant's "prior underage substance abuse is sufficiently related to the instant conviction" of vehicular manslaughter).

In the end, Oliver's argument that his criminal history was improperly weighted "boils down to an assertion that the district court should have balanced the § 3553(a) factors differently," an argument that is "simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (citation modified). Although Oliver disagrees, "it was reasonable for the district court to place substantial weight on [his] criminal history in reaching its sentencing determination." *United States v. Webb*, 403 F.3d 373, 384 (6th Cir. 2005). Based on the record and the presumption of substantive reasonableness granted to this bottom-of-the-Guidelines sentence, we see "no cognizable basis for second guessing the district court's exercise of sentencing discretion." *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009).

## III.

For the reasons set out above, we AFFIRM.